Isaac Hess *et al.*

*v.*

Edward A. Rosenthal, Admr.

*Filed (on rehearing) at Ottawa March 28, 1896.*

1. TRIAL—*when verdict should not be directed for defendant.* Direction of a verdict for defendant in an action for the death of an employee from falling into a vat of hot grease while cleaning out a rendering kettle is properly refused, where the evidence tends to establish that such employee was set to work outside of his ordinary duties, upon a slippery place, without warning, and that the vat was not properly covered.

2. PLEADING—*declaration need not allege deceased was not a fellow-servant.* A declaration for damages for the death of an employee need not allege that he was not a fellow-servant with the other employees.

3. MASTER AND SERVANT—*placing servant in a place temporarily unsafe.* That the unsafe condition of the place in which an employee is set to work is but temporary will not relieve the employer from liability for the death of such employee, where the place is unsafe at the time he is brought there to work, and no warning is given him of the peril.

4. SAME—*personal knowledge by master of unsafe condition not essential.* Personal knowledge by an employer of the unsafe condition of the place at which an employee is set to work is not essential to render the employer liable for the death of such employee because of such

unsafe condition, where it was known to the employee who had charge and who placed the deceased employee to work there.

5. SAME—*duty of furnishing servant a safe place to work.* The duty to exercise reasonable care to see that the place furnished for a servant to work in is reasonably safe, is a positive obligation towards the servant, and the master is liable for any failure to discharge that duty, whether he undertakes that performance personally or through another servant.

*Hess* v. *Rosenthal,* 55 Ill. App. 324, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

ROSENTHAL, KURZ & HIRSCHL, and BYAM & WEINSCHENK, for appellants:

Defendants were entitled to the instruction that they are not responsible for temporary misplacements of portions of apparatus incident to ordinary use. *Eicheler* v. *St. Paul,* 40 Minn. 263; *Jennings* v. *Iron Bay,* 47 id. 111.

Defendants were entitled to the instruction that there must be notice to them of the defect, or that it must be of such duration as to raise a presumption of notice. *Goldie* v. *Werner,* 151 Ill. 551.

Some proof must be offered of at least usual care and sobriety, to raise the presumption of care. *Railroad Co.* v. *Bailey,* 145 Ill. 159; *Railroad Co.* v. *Nowicki,* 148 id. 29.

Plain and obvious risks are assumed. *Foley* v. *E. L. Co.* 54 N. J. L. 411; *Swoboda* v. *Ward,* 40 Mich. 424; *Illick* v. *Railroad Co.* 67 id. 637; *Laning* v. *Railway Co.* 49 N. Y. 521; *Gibson* v. *Railway Co.* 63 id. 449; *Odell* v. *Railway Co.* 120 id. 325; *Powers* v. *Railway Co.* 98 id. 274; *Clark* v. *Railway Co.* 28 Minn. 128; *Platt* v. *Railway Co.* 84 Iowa, 694.

Smith and Schuman were not discharging a master's duty, but merely using the apparatus for the purpose for which it was made, and hence were discharging the duties of operatives, and were fellow-servants with deceased. *Crispin* v. *Babbitt,* 81 N. Y. 516.

A foreman, or even a superintendent, in leaving a door open, is held to be discharging only a servant's duty. *Geoghegan* v. *Steamship Co.* 22 N. Y. Sup. 749.

Where a superintendent negligently dropped a hatch upon an employee the master was held not liable. *Hussy* v. *Conger*, 112 N. Y. 614.

Even as to parts of machinery wearing out, the master does his full duty by supplying new ones, and it is the servant's duty to adjust them. *Mining Co.* v. *Erling*, 148 Ill. 521; *Benn* v. *Null*, 65 Iowa, 407; *Smith* v. *Lowell*, 124 Mass. 114; *McGee* v. *Boston C. C.* 139 id. 44.

The master is not liable where the engineer continues using a machine after a clamp breaks. (*Philadelphia* v. *Davis*, 111 Pa. St. 597.) Nor where the captain of a lighter allowed a rope to wear out. (*Johnson* v. *B. T. Co.* 135 Mass. 209.) Nor where the foreman on a derrick improperly used the ropes. (*McKinnon* v. *Norcross*, 148 Mass. 533.) Nor for an insecure scaffold, where sufficient material has been supplied by the master. (*Armour* v. *Hahn*, 111 U. S. 318.) Nor for too weak a pin used in fastening a rope, where a stronger one had been supplied. (*Harmes* v. *Sullivan*, 1 Ill. App. 255.) Nor for the servant's neglect in allowing an appliance for stacking lumber to become weak and defective. (*Baldwin* v. *St. Louis*, 63 Iowa, 212.) Nor for negligence of a foreman in placing a defective plank over a hole, when good ones were at hand. *Mahoney* v. *Oil Co.* 28 N. Y. Sup. 196, and cases cited.

Liability is not determinable from the rank or gradation of the negligent person, but from the nature of the act performed or omitted. *Cullen* v. *Norton*, 126 N. Y. 1, and cases cited; *Lindvall* v. *Woods*, 41 Minn. 212, and cases cited.

MOSES SALOMON, and BRANDT & HOFFMANN, for appellee:

The master may be negligent in commanding the servant to go into exceptionally dangerous places, or to

subject himself to risks which, though he may be aware of the danger, are not such as he may have reason to expect or consider as being in the employment. Cooley on Torts, 555; *Railway Co.* v. *May*, 108 Ill. 288; *Railway Co.* v. *Johnson*, 27 Ill. App. 352; *Railroad Co.* v. *Lowe*, 17 Wall. 553; *Railroad Co.* v. *Bayfield*, 37 Mich. 205; *Railroad Co.* v. *Iowa*, 10 Ind. 554; *Dock Co.* v. *McMahon*, 30 Ill. App. 358; *Fraser* v. *Hand*, 33 id. 153; *Stearns* v. *Reidy*, id. 246.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit as administrator of the estate of Alter Uchineck, deceased, against appellants, to recover damages for the death of said Uchineck, who lost his life by falling into a vat containing hot grease, while working for appellants in their slaughter-house in Chicago. In the trial court appellee recovered a judgment for $5000, which, on appeal, was affirmed by the Appellate Court.

At the close of all the evidence the defendants asked the court to direct a verdict for them. The court refused to give such direction, and it is contended that such refusal was error, and that the evidence, with all the legitimate and natural inferences to be drawn therefrom, was wholly insufficient to sustain a verdict for the plaintiff.

The declaration contained three counts, in each of which it was alleged that deceased was employed by the defendants in their establishment as a common laborer, in salting hides, which service was not attended with hazard or danger; that he was ignorant of the method and manner of cleaning the dregs from rendering kettles; that he was ordered to desist from his usual occupation as common laborer in salting hides, and to go and clean out the dregs of a rendering kettle, and that while cleaning such kettle in obedience to said order, and standing upon a vat, in the exercise of all due care and caution, he fell into an adjoining vat of boiling oil or lard, causing

his death.    The charges of negligence in the various , counts consisted in failing to provide for deceased a safe and suitable place to work; by requiring him to stand upon a vat which was greasy and slippery, with an adjoining vat of boiling oil uncovered; in not providing proper and safe implements and tools with which to clean the kettle; in not supplying a safe and suitable cover for the vat on which he stood; in not covering up the adjoining vat of boiling oil; in not properly instructing him in the manner and method of cleaning out the kettle, and in ordering him from a safe employment into an unusual, hazardous and dangerous work.

The evidence introduced at the trial established the following facts: On Sunday, July 10, 1892, deceased applied for work at the slaughter-house.    He had kept a saloon in Russia, and had never been engaged in the kind of work carried on by defendants, and one of the defendants was informed of that fact.    He was given a job at salting hides in the basement, and was engaged at that work, or common labor in cleaning and sweeping up, until Tuesday morning, when he was directed to take the place of a workman who had been called away to a trial, and was then set to work at raking or cleaning out a kettle.    There were three of the kettles set side by side, which drained into vats.    Into the kettle at which deceased was set to work were put the refuse, offal and paunches of cattle slaughtered in the establishment. After putting this material into the kettle it was boiled and drained into the vat by its side, and the contents were then raked from the kettle upon the cover of the vat.    Deceased was placed upon this cover and directed to rake the filth and refuse upon the spot where he stood. The kettle next to the one he was cleaning was used for grease, which ran from the kettle into a vat below at his side.    This vat had a cover, which was either entirely off or not properly and safely adjusted.    No information or instruction was given to him as to any dangers or risks.

160—40

He commenced the work, and in a very short time a splash and scream were heard, and he was found in the tank of hot grease. The evidence on the part of plaintiff was that the cover on which deceased was standing was slippery on account of lard being spattered on it, while the evidence for defendants was that it was wet, but not greasy.

There was no such failure of proof in the case as would justify the giving of the instruction to find for defendants, and the refusal complained of was right. The evidence tended to establish charges of negligence made in the declaration in failing to provide for deceased a reasonably safe and suitable place to work, and not properly covering up the vat of boiling grease. The evidence for the plaintiff was that the vat was entirely uncovered, while the testimony for defendants showed that the cover was on, but that it was not in place and not safe, so that when the deceased fell into the vat the cover was tipped up and went into the vat with him. Either condition rendered the place unsafe and unfit as a place to work, and made the service required of him exceedingly hazardous. Nor was there an absence of evidence tending to show ordinary care on the part of the deceased. He was wholly unacquainted with the situation and the employment, and there was but brief opportunity to become acquainted with them so as to fully understand and appreciate the dangers and hazards to which he was exposed. The defendants gave him no information of the dangers of his situation, and, according to the testimony introduced by them, the cover, which in fact formed a trap over the boiling oil, was on the vat in such a position that one not conversant with it, as he was, would not apprehend the great danger which existed. The full knowledge of the danger, and of the proper and safe method of adjustment, was with the defendants, and the duty of exercising reasonable care to see that the place was safe rested on them.

A motion in arrest of judgment was made and over-ruled. The ground of that motion is said to be that the declaration failed to allege that the deceased was not a fellow-servant with the other employees. Such averment was not necessary. *Cribben* v. *Callaghan*, 156 Ill. 549.

It is next claimed that the court erred in refusing to give two instructions asked by the defendants, the first of which is as follows:

"Although it was the duty of the defendants to use ordinary care in providing reasonably safe apparatus for their business, yet if the jury believe, from the evidence, that they made such provisions, they were not responsible for brief or temporary displacements of portions of such apparatus, growing out of its ordinary use by the employees of the defendants."

There was no evidence tending to show that there was any change in the condition of the tank into which deceased fell, while he was there. There was no brief or temporary displacement of it in its use during his employment at that place. If the tank was unsafe when he fell into it, it was unsafe when he was brought there to work. The charge which the proof tended to show was, that defendants set an unskilled man to work in a dangerous place and without informing him of the perils surrounding him. It made no difference, as between these parties, that the place was dangerous only at that time, if it was dangerous when he was set to work and when he was injured. By the instruction, the mere fact that the dangerous condition was temporary, and grew out of the ordinary use of the vat, was made conclusive in favor of defendants. It made no difference who took the cover off or misplaced it, or what use such condition grew out of, and the instruction was not applicable to the case. It was properly refused.

The other refused instruction was as follows:

"The jury are instructed, that even if the jury believe, from the evidence, that the vat into which deceased fell

was in a defective condition because its cover had been left off, the defendants cannot be held liable for such defect, unless they, or one of them, knew of the defect, or that it had existed for such a time that they, or one of them, could have learned it upon paying ordinary attention to the business and the property."

As applied to the question in controversy in the case, this was saying that even though the place where deceased was set to work was unsuitable and unsafe, and the servant of defendants having charge of that department knew the fact and set the deceased to work in such place and without explaining to him any of the dangers of the situation, yet defendants would not be liable unless they, or one of them, personally knew that the place was unsafe and unsuitable or had had sufficient time to personally learn that fact. The duty to exercise reasonable care to see that the place furnished for a servant to work is reasonably safe is a positive obligation towards the servant, and the master is responsible for any failure to discharge that duty, whether he undertakes its performance personally or through another servant. The master cannot divest himself of such duty, and he is responsible as for his own personal negligence for a want of proper caution on the part of his agent. (*Chicago and Northwestern Railway Co.* v. *Swett,* 45 Ill. 197; *Chicago and Northwestern Railway Co.* v. *Jackson,* 55 id. 492; *Mobile and Ohio Railroad Co.* v. *Godfrey,* 155 id. 78; Cooley on Torts, 561.) The instruction was erroneous.

The amount of the judgment and the special findings of the jury are complained of; but these, and all other questions of fact, are conclusively settled by the judgment of the Appellate Court, and, no error of law appearing, that judgment will be affirmed.

*Judgment affirmed.*