JOSEPH J. DUFFY *et al.*

*v.*

MAURICE KIVILIN.

*Opinion filed April 16, 1902.*

1. FELLOW-SERVANTS—*court can declare that relation exists only when evidence is conclusive.* It is only when the evidence is such that all reasonable minds must reach the conclusion that the relation of fellow-servants exists between employees of the same master that the court can declare them to be fellow-servants.

2. SAME—*fellow-servant rule stated.* To create the relation of fellow-servants between employees of the same master, they must either be so co-operating in a particular work at the time of the injury, or their usual duties be such as to bring them into such habitual association as to afford them the power and opportunity of exercising an influence upon each other promotive of proper caution for mutual safety.

3. SAME—*when existence of relation is properly left to jury.* Whether an engineer operating the hoisting elevator at a tunnel shaft is a fellow-servant of a mule driver riding up on the elevator with a

car of dirt to obtain supplies for the workmen below, is a question for the jury, under evidence that the mule driver had nothing to do with putting cars on the elevator or giving the engineer signals, or that he in any way co-operated with the engineer in running the elevator, his duties being to deliver cars to and receive them from another servant at the bottom of the shaft and to go up on the elevator to the surface to obtain supplies when needed.

*Duffy* v. *Kivilin*, 98 Ill. App. 483, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

O. W. DYNES, for appellants.

THEODORE G. CASE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellee, while in the employ of the appellants, received serious bodily injuries, caused, as he alleged, by the negligence of the appellants. He instituted an action on the case, and on the verdict of a jury recovered a judgment against appellants in the sum of $5000. The judgment was affirmed by the Appellate Court for the First District on appeal, and a further appeal perfected by appellants has brought this record before us for review.

But two questions arise: First, whether the trial court erred in denying the motion entered by appellants at the close of the evidence to exclude the evidence and peremptorily direct the jury to return a verdict for appellants; second, should it have been declared, as a matter of law, the injuries received by the appellee were occasioned by the negligence of a fellow-servant. A brief reference to the facts disclosed by the proofs is necessary to the disposition of these questions.

Appellants were engaged in excavating a tunnel under the city of Chicago at a depth of one hundred and ten feet below the surface. It was connected with the surface by a vertical shaft, in which the appellants main-

tained an elevator or hoisting appliance, which they operated by steam power. The elevator, lift or cage, as it is variously called, was but a platform with a railing, composed of wood and iron, of the height of about three feet on two sides thereof. The ends were unprotected with a railing or otherwise. This elevator was used for the purpose of hoisting the earth, rock, etc., which had been excavated in the tunnels, to the surface, and was also availed of to hoist and lower the workmen. The earth, rock, etc., excavated in making the tunnel was brought to the bottom of the shaft in cars or trucks, which were moved upon an iron track laid in the bottom of the tunnel for that use. Each loaded car was drawn by a mule along this track. The duty of the appellee was that of a "mule driver." The manner of carrying on the work required the mule driver to hitch his mule to a loaded car at the extremity of the tunnel where the miners were at work, and drive from thence to a switch near the hoistway of the shaft and place the car on the switch. The loaded car then passed into the control of a workman called the "lower cager," whose duty it was to move the car to and place it upon a track prepared for its reception on the elevator platform. When so in place on the elevator platform or cage the lower cager would signal that fact to the engineer at the surface, and the car and its contents would be hoisted to the mouth of the shaft and there be delivered to another workman called the "upper cager," to be emptied. When emptied, the car would be returned to the elevator or cage and lowered to the bottom of the shaft and there received by the lower cager, whose duty it was to remove it from the elevator platform or cage and place it upon the track. The car then came again into the control of the mule driver, who would hitch his mule to it and draw it along the track in the tunnel to the point where the earth and rock were being excavated, there to be again filled and returned, as before, to the lower cager. The mule driver

was also charged with the duty of bringing oil, candles and other supplies needed by the miners from the store house, which was at the surface, and when on such errands he was hoisted from and lowered into the tunnel by means of the platform elevator or cage going up or down with the loaded or unloaded cars, as the case might be. The rails composing the track on the elevator platform or cage were indented, so as to allow the wheels of the car to rest in the indentation, the purpose being to thus hold the car in place on the elevator. This contrivance the workmen called a "lock" for the car. On the 13th day of February, 1897, the appellee, who was then engaged in the employ of the appellants as a mule driver in the tunnel, was required to go to the top of the shaft to bring down some oil and candles for the miners. The lower cager had placed a flat car on the elevator platform or cage to be hoisted, and the appellee entered the elevator and stood on the car to be hoisted with it to the mouth of the shaft. The lower cager signaled the engineer to "hoist up." The evidence tended to show the elevator or cage was started rapidly upward with a sudden, violent jerk, which caused the car wheels to leave the indentures in the rails of the track and tip upward at the rear end and run off the elevator at the front end thereof, and pinched the appellee between the wall of the shaft and the elevator, and finally the appellee and the car dropped together to the bottom of the shaft. The appellee was seriously injured. One Spellman was the engineer at this time, and the recovery was awarded upon the theory it was his negligence in controlling the engine which imparted the violent and sudden jerking motion to the elevator and caused the appellee to be injured.

Counsel for appellants insists that in view of the undisputed facts of the case it was the duty of the court to have declared, as matter of law, that the appellee and Spellman were fellow-servants, and to have directed the jury to return a peremptory verdict for the appellants.

It is only when the evidence is such that all reasonable minds must reach the same conclusion as to the relation existing between employees of the same master that it may be declared, as matter of law, that such servants are fellow-servants. (*Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 Ill. 330; *Meyer* v. *Illinois Central Railroad Co.* 177 id. 591.) In the absence of such conclusive character of the proof the question is one of fact, to be determined by the jury under proper instructions defining the relation of fellow-servants. The appellee and the engineer, Spellman, were servants of the same master, but that was not enough to constitute them fellow-servants. To create that relation between servants they must be either directly co-operating in a particular work at the time of the injury, or their usual duties be such as to bring them into such habitual association as will afford them the power and opportunity of exercising an influence each upon the other promotive of mutual safety. (*Pagels* v. *Meyer,* 193 Ill. 172.) The appellee and the engineer, Spellman, were not directly co-operating in the work of moving the earth and rock that had been excavated from the place where it had been dug to the surface of the ground. The appellee's duty in connection with such removal of the earth, etc., was to haul empty cars from the place on the track near the bottom of the shaft, where empty cars were placed by the lower cager, to the part of the tunnel where the work of excavation was being carried on, and to haul loaded cars from such point in the tunnel back to the point on the track near the bottom of the shaft where the lower cager was to receive loaded cars. He had no duty to perform in the matter of taking the empty cars from the elevator and placing them on the track in the tunnel, that work being performed by the workman called the "lower cager," who removed the cars from the elevator and placed them on the track or switch, which was the place prepared for empty cars to stand until the appellee should find occa-

sion to move an empty car to the place in the tunnel
where it was to be filled with earth, etc. Nor had he any
duty to perform in the matter of placing the cars on the
elevator. When he had hauled a loaded car to the point
on the track where it was intended the loaded car should
stand until the elevator was in place to receive it, his
duty with such loaded car terminated. Such loaded car
then passed into the control of the employee called the
"lower cager," whose duty it was to move the loaded cars
from the track in the tunnel to the track on the elevator
or cage. All signals to and communications with the
engineer were had by the lower cager. The appellee
and the engineer were not in anywise consociated in the
work of hoisting the cars out of the shaft or lowering
them from the surface to the bottom of the tunnel. The
other duty which devolved on the appellee was to bring
to the men engaged in the work of making the excava-
tion such supplies as they needed from time to time.
These supplies were kept at the surface of the ground,
and in going to the storehouse where they were to be
had, and in returning from thence to the tunnel, the ap-
pellee was transported up and down the shaft by means
of the elevator. It did not appear from the testimony
the appellee and the engineer in anywise co-operated in
the work of hoisting or lowering the elevator or cage.
The engineer was directed as to the movements of the
elevator either by the lower cager at the bottom of the
shaft or by another servant at the surface called the
"upper cager." The appellee was simply conveyed up-
ward or downward in the elevator, without power, author-
ity or duty to participate in any way in the management,
control or work of moving the cage. The duties of appel-
lee and the engineer did not require co-operation. Nor
could the trial court have properly declared, as matter
of law, that their usual duties brought them into such
habitual association as to give them the opportunity and
power to influence each other to the exercise of caution.

The evidence sufficiently tended to show that the engineer negligently caused the elevator platform or cage to be started upward with a sudden, violent motion or jerk, to make it the duty of the court to submit to the jury the question of fact whether the allegations of negligence charged in the second count of the declaration had been proven.

The judgment must be and is affirmed.

*Judgment affirmed.*