John S. Metcalf Co. v. Nystedt.

102     71
a203s 333

102     71
114    ³574

## John S. Metcalf Co. v. John Nystedt.

1.  CONTINUANCES—*When Properly Refused.*—A motion for a continuance based upon affidavits setting up the absence of a witness, but in which it does not appear that there are no other witnesses present by whom all the facts material to the issues could be shown, is properly overruled.

2.  SPECIAL INTERROGATORIES—*When to be Refused.*—If the answer to a special interrogatory most favorable in form to the party offering it would not render such finding irreconcilable with a verdict for the opposite party it may be refused.

3.  MASTER AND SERVANT—*Duty of the Master in Providing Safe Appliances.*—It is the duty of the master to exercise reasonable care in providing reasonably safe appliances for the use of the servant and in providing him a reasonably safe place in which to do his work.

4.  SAME—*Duty of the Master in Regard to the Safety of the Place Where His Servant is Ordered to Work.*—Where a servant is ordered to work upon a platform built by another, it is the duty of the master, as between himself and the servant, to see that such platform is securely and safely supported for the work required to be done.

5.  FELLOW-SERVANTS—*Who Are, a Question of Fact.*—It is a question of fact to be determined by the jury under proper instructions as to whether or not the relation of fellow-servants exists in the case under consideration.

**Trespass on the Case**, for personal injuries.    Appeal from the Superior Court of Cook County: the Hon. JOSEPH E. GARY, Judge presiding. Heard in this court at the October term, 1901.   Affirmed.   Opinion filed May 5, 1902.

**Statement.**—Action for personal injuries received February 5, 1900.

The plaintiff, a servant of the defendant, was one of a gang of carpenters employed in the building of a grain elevator in the city of Chicago.    The elevator was forty

feet wide and 120 feet long. From the height of thirty feet above the ground the entire building consisted of bins built honey-comb fashion. The walls, and the partitions which cut up the interior into bins, were made of plank laid flatwise and then nailed together. A platform, slightly smaller than the interior of the bin, was constructed in two parts, for convenience of handling, and placed in each bin. Upon this platform the carpenter stood while at work upon the walls of the bin. When the wall reached a height that rendered further building inconvenient from the then platform level, lugs or strips of plank were laid in, or fastened on, the inside walls of the bin by the carpenter, and then the platform was raised up and supported on these new lugs, and the building of the wall progressed from this new level. These lugs were selected by each carpenter for himself from the material used in building the walls. When the platform was moved up the old lug was sawed off. These bins were of two sizes—small, about 6' x 13", and large, about 13' x 13'. It was customary for one carpenter to work in each small bin, and for two or three to build the large bins. The building of the outer walls progressed equally with the building of the partitions that separated or defined the bins. At certain stages of the work the walls were bound by the laying on of long timbers. In the middle of the building was a tramway, running lengthwise, on which the building materials were brought to the places where they were to be used.

The plaintiff was a carpenter, experienced in elevator building, but had not worked on this cribbing until the day he was hurt, and had never seen the lugs used there until that morning. About three o'clock P. M. a stick of timber, one foot square and forty feet long, was brought up. It was necessary to swing it one-fourth of a circle to get it into place. Royea, the foreman, called plaintiff and other workmen then at the top of the structure, from their respective bins, to move the timber. They did so, and in doing it clambered over the partition walls of the bins and stood upon the bin platforms, they being about four feet

lower than the top of the walls, while lifting and pushing the timber into place. When called, plaintiff put his hands in his pockets to get his gloves, as the timber was icy, when the foreman (according to plaintiff) said, "Take your hands out of your pockets, and put them on the timber and go ahead and work!" and (according to Julien) the foreman said to plaintiff as he came up, "Get hold of that timber, God damn you, and don't keep your hands in your pockets." At this command six or eight men sprang down upon a platform in one of the small bins—not the one in which the plaintiff worked, but at least two bins away—and lifted up on the timber. Their weight, and the added pressure from the attempt to lift or push the timber along, caused the breaking of one of the lugs underneath the platform, and five of the men, of whom the plaintiff was one, fell to the bottom of the crib, a distance of about forty-five feet. The injuries suffered by the plaintiff were very severe. His left leg was broken in three places, the knee joint injured, and there was a contused wound in his side. The shock seriously and probably permanently affected his nervous system. Dr. Hepburn says "he will never be able to use that leg." Dr. Adams testified: " I think he will never be able to do a day's work as a carpenter."

At the close of the plaintiff's case the defendant moved the court to instruct the jury to find the defendant not guilty. The court overruled the motion.

The defendant offered no evidence, but submitted seven special interrogatories to be considered and answered by the jury. The court refused to submit any of them to the jury.

The court then gave to the jury certain instructions asked for by the plaintiff, and gave them certain instructions for the defendant, and refused to give certain instructions asked for by the defendant, and modified certain other instructions offered by the defendant and gave them as thus modified. Verdict for plaintiff for $5,000; motion for new trial overruled; judgment on verdict, and appeal perfected.

WALKER & PAYNE, attorneys for appellant.

DENEEN & HAMILL, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

The motion of defendant for a continuance, based upon affidavits setting up the absence of the foreman, Royea, was properly overruled. These affidavits state many facts to which the witness, if present, would testify, some of which are material and others are not; and then they assert that such witness is the only one who can swear " to all the facts herein set out." *Non constat*, other witnesses were present by whom all of those facts which were material to the issue could have been shown. Jarvis v. Shacklock, 60 Ill. 378.

The special findings presented by appellant were properly refused. The answer to any one of them, in a manner most favorable to the appellant, would not render that finding repugnant to and irreconcilable with a verdict for the appellee. C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132.

Instructions numbers three and four tendered by appellee and given by the court, are carelessly drawn. In number three, it is stated that it is "the duty of a master to exercise reasonable care in providing safe appliances and a safe place for the servant to work;" and in number four it is alleged " that it is the duty of a master to exercise reasonable care in providing safe appliances, apparatus and instrumentalities for the use of the servant." The rule fully stated is that it is the duty of a master to exercise reasonable care in providing reasonably safe appliances for the use of the servant, and in providing him a reasonably safe place to work. Hess v. Rosenthal, 160 Ill. 621.

These two instructions as given do not necessarily require the master to furnish the servant an absolutely safe place to work, nor to furnish him with absolutely safe appliances. Even the technical reader would say that the word " reasonable" preceding the word " care " qualifies the word " place " or " appliances " which follows in the same phrase.

Were the evidence conflicting, we would hesitate to pass

by such instructions, but it is plain that under the undisputed facts of this case they did no harm to appellant. East St. Louis v. Crow, 52 Ill. App. 573–576, and cases cited.

We find nothing that is reversible error in the giving or in the refusal of any of the other instructions.

Were appellee and the carpenter, Kowald, who selected and put in place the lug which broke under the combined weight of and the lifting power exerted by these six or eight men, fellow-servants ? If they were, then the verdict should have been for appellant. The evidence upon this point was not so conclusive that all reasonable minds must reach the same conclusion on the facts (Duffy v. Kivilin, 195 Ill. 630); and it therefore remained a question of fact to be determined by the jury, under a proper instruction, as to when the relation of fellow-servants exists. The court, by instruction No. 13, presented by appellant, stated this relationship clearly and correctly. The jury found that Kowald and appellee were not fellow-servants; and under the facts we can not say that such finding is wrong.

This accident did not occur in the bin upon which the appellee was working, but in a bin at least two removes distant and next to the outer wall. The lugs in this last bin were selected and put in place by Kowald, another carpenter. There is no evidence showing any knowledge upon the part of appellee as to the character of the lugs supporting this platform, nor is it asserted that reasonable care for his own safety required him to personally examine the lugs before he stepped upon the platform to assist in lifting the timber. It seems that where appellee is ordered to work upon a platform, not built or supported by himself, but by another, it is the duty of the appellant, as between himself and appellee, to see that such platform is securely and safely supported for the work then and there required to be done. McBeath v. Rawle, 192 Ill. 626.

Was the injury to appellee caused by his obedience to an improper order given by the foreman ? The appellee and the other men then at work on the top of this elevator were suddenly and peremptorily called from their ordinary labor

by the foreman and commanded to assist in putting this large timber in place. The time was midwinter, and the timber was icy. In obeying this command the men were given no opportunity for reflection, for when appellee paused to put on his gloves he was met by the harsh order, " Get hold of that timber, G–d d—n you, and don't keep your hands in your pockets." The men were not given time to think; it was their duty to obey. They sprang to the timber, which lay partly over the outer wall, crowded upon this platform, that being the place from which they could best handle the timber, and attempted to lift the timber, when the platform gave way.

The foreman must be held to know that this platform was supported by lugs intended primarily to sustain the weight of but one carpenter while at work; that if it were subjected to a six or eight-fold pressure it might not stand the strain. These things he had time to consider, for he was superintending the bringing up and the putting of this timber in place. No such opportunity was given the men. It follows that the jury were justified in finding the order an improper one, and in holding the appellant responsible for the disastrous consequences that followed the attempt to obey it.

The judgment of the Superior Court is therefore affirmed.