## Spring Valley Coal Company v. Simon Buzis.

### Gen. No. 11,457.

1. · NEGLIGENCE—*when, cannot be imputed to employee.* Negligence cannot be imputed to an injured employee who took the only way he could to go to his work—the way provided for him by his employer—and who was not in charge of the cage used for such purpose, knew nothing of its defects, could not see the engineer nor the engine, and entered such cage in the usual and customary manner and was injured by being dropped to the bottom of a mine shaft with such rapidity that he was thrown out of the cage.

2. ASSUMED RISK—*what not.* A danger not incident to the employ-

Spring Valley Coal Co. v. Buzis.

ment of an injured employee is not an assumed risk within the meaning of the law.

3.  FELLOW-SERVANTS—*who are not.*  An engineer and a coal miner are not fellow-servants where they were not at the time of the injury directly cooperating with each other, and where their usual duties did not bring them into habitual association so that they might exercise a mutual influence upon each other promotive of proper caution.

4.  FELLOW-SERVANTS—*burden of proof to establish relation of.*  The burden of proof to establish such relation is upon the master.

5.  ELEVATOR—*degree of care required in operating.*  While in this state it is doubtful whether a presumption of negligence arises where an employee is injured by the fall of an elevator, yet it is true that one having in charge an elevator must use great care and diligence to avoid injury to its occupants.

6.  RELEASE—*when, does not bar recovery.*  When an issue was made that the release pleaded was obtained by fraud, and there was evidence fairly tending to support such issue and the jury found against the validity of such release, the same will not bar a recovery.

Action on the case for personal injuries.  Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1903.  Affirmed.  Opinion filed July 14, 1904.

**Statement by the Court.**  Appellant owned and operated a coal mine at Spring Valley, Illinois.  Appellee was in its employ as a coal miner.  July 8, 1901, appellee was injured while going down to his work.  This suit was brought to recover for the personal injuries thus received.

The coal shaft is about 500 feet deep.  Over the shaft there is a tower 75 feet high.  Two cages or elevators run up and down in the shaft.  They are used to bring coal to the surface and to raise and lower the coal miners.  By no other way can the men reach or leave their work.  These cages are so joined that one is hoisted while the other is lowered.  These cages are run by a steam engine set in a building 50 feet from the shaft.  The engineer while on duty cannot see the cages.  He is notified by an employee called the " top cager," stationed in the tower, when it is desired to start the cages.  The coal miners had nothing to do with the starting or stopping of the cages, nor with the running of the engine, which was hidden from them by the building.  July 8, 1901, appellee and about ten other work-

men, the usual number, got into one of the cages to go down to work. The "top cager" gave the order to the engineer. The cage started down, and dropped with such rapidity that it struck the bottom of the shaft with great violence, throwing the workmen out, and severely injuring appellee.

The record does not show why the cage fell "like a stone." Appellee does not know the cause, and appellant made no attempt to explain the cause of the accident.

A. R. GREENWOOD and HENRY S. ROBBINS, for appellant.

DANIEL BELASCO and COLLINS & ABRAHAM, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Upon the facts of this case no negligence can be imputed to appellee. He took the only way he could go to his work —the way which appellant had provided for him. He did not have charge of the elevator or of the engine. He had no knowledge of the defects, if any, in either of them. He could not see the engineer nor the engine. With other fellow miners he got into the cage in the usual and every-day manner, and appellant dropped him to the bottom of the shaft with such rapidity that he was thrown out of the cage and thereby injured. McGregor v. Reid, 178 Ill. 472.

The injury to appellee was not caused by a danger incident to his employment, and therefore it was not assumed by him when he went into the service of and continued to work for appellant. The engineer and appellee were not fellow-servants. They were not directly cooperating with each other, nor did their usual duties bring them into habitual association so that they might exercise a mutual influence upon each other promotive of proper caution. The burden of proof to establish the relation of fellow-servants is upon appellant. Hartley v. C. & A. Ry. Co., 197 Ill. 446; Missouri M. I. Co. v. Dillon, 206 Ill. 155. There is no evidence in this record tending to show the existence of this relationship.

Where the relation of common carrier and passenger

exists, the fall of the elevator, without explanation as to the cause of its fall, is evidence tending to prove negligence upon the part of the carrier. Hartford Dep. Co. v. Sollitt, 172 Ill. 222; Springer v. Ford, 189 Ill. 430. It is doubtful if this presumption is applied in this state to the case of an employee in going to and from his work. In McDonough v. Lanpher, 57 Minn. 501, it was held that an employee thus situated was carried as an employee and not as a passenger. This case is cited with approval in McGregor v. Reid, 178 Ill. 464, where the servant was injured by the fall of the elevator in which he was riding, upon a proper errand, from one floor to another in the building of his employer. It is there said : "Appellee is not liable, however, on the facts proved, as a common carrier of passengers, as contended for by appellant, but, if at all, only for its failure to use that degree of care which the law requires that it, the master, should exercise in providing a safe means of transit for appellant, its servant, from one to another of the several floors of its building, to and from which it was necessary for him to pass in the performance of his duties."

In Duffy v. Kivilin, 195 Ill. 630, the plaintiff was working in a tunnel 110 feet below the level of the city of Chicago. The material removed from the tunnel was taken up through a shaft by means of a steam elevator. It was the duty of the plaintiff to bring loaded cars to and to remove empty cars from the shaft. Each loaded car as it reached the shaft, was turned over by him to a workman known as the "lower cager." This man put the car upon the elevator cage, and then signaled the engineer to hoist. At the surface the car was received by another workman called the "upper cager," who emptied it, then replaced it upon the elevator and sent it below. The "lower cager" took it off the elevator and turned it over to the plaintiff. On the day he was injured, the plaintiff was ordered to go from the tunnel to the top of the shaft to bring down certain supplies for the miners. He stood in a car in the cage. The "lower cager" signaled the engineer to "hoist up." The cage started rapidly upward with a sudden, violent

jerk, which caused the car to shift and finally to drop with the plaintiff to the bottom of the shaft, to his serious injury. The case was tried upon the theory, of which there was no direct proof, that it was the negligence of the engineer in controlling the engine which caused this jerking motion. The court, from an analysis of the evidence, reached the conclusion that the plaintiff and the engineer were not directly cooperating in the work of removing material from the tunnel, and that their duties did not require cooperation. It is then said : " The evidence sufficiently tended to show that the engineer negligently caused the elevator platform or cage to be started upward with a sudden, violent motion or jerk, to make it the duty of the court to submit to the jury the question of fact whether the allegations of negligence charged in the second count of the declaration had been proven."

In the case at bar, appellant hired appellee to work as a coal miner. The place of work was 500 feet below the surface of the ground. Appellant impliedly said to appellee : " There is no way for you to reach your work except to descend the shaft. In order that you may do so, I have placed two elevator cages therein, and I now ask you to get into one of these cages and I will lower you in safety to the bottom of the shaft." Appellee complied with the request. For some reason we are not permitted to know, appellant dropped him with such rapidity that he was badly injured. Care is always proportioned to the danger to others. In the use of as dangerous a machine as is an elevator, great care and diligence is required upon the part of one who has the life of another in his charge.

We regard the case of Duffy v. Kivilin, *supra*, as decisive of the one before us. The facts are similar, and there is a like uncertainty in each case as to the exact cause of the accident. Here, as there, the evidence is sufficient to send the case to the jury upon the question of the alleged negligence of appellant as charged in the declaration.

Appellee was severely injured as a result of this accident. The fibula of his left leg was broken, and up to the time of the trial in June, 1903, the broken parts had not united.

Spring Valley Coal Co. v. Buzis.

His left knee cap was broken and thrown downward and outward. As a result of consequent inflammation, the motion of the left knee joint is limited. He was confined to his bed for six weeks, and was unable to leave the house for six months. After the lapse of nearly two years he still used a cane in walking.

The jury returned a verdict fixing the damages at the sum of $5,000. Appellee remitted one-half of this amount and judgment was entered for $2,500.

Nine days after the accident an agent of appellant, accompanied by the physician in charge, visited appellee. The latter, being of foreign birth, could speak but little English, and could neither read nor write it. The visitors were ignorant of his native language. One Louis Novak, since dead, acted as interpreter for the parties. The conversation resulted in the payment of $35 by the agent to appellee, and the execution and delivery by appellee to the agent of a paper which purported to be a full release of appellant for all damages coming to him from the accident. The evidence of appellant tended to prove that appellee was informed of and agreed to the terms set down in this paper, although no one of appellant's witnesses who was present at that interview understood what was said between Novak and appellee. The evidence of appellee tended to prove that he was told by Novak the $35 was given him to help him along while sick, and that the paper signed by him was merely a receipt for the money handed him. Under these circumstances, the question whether or not the release was legally obtained from appellee was one of fact to be determined by the jury, under proper instructions as to the law, from the evidence before them. This contention was fairly submitted to the jury, and they found against the validity of the paper. We cannot disturb this finding. It is justified by the evidence.

Instructions tendered by appellant, numbered 1 and 4, were properly refused. Each one is an abstract instruction. Neither finds support in the evidence.

The judgment of the Superior Court is affirmed.

*Affirmed.*