## Chicago & Eastern Illinois Railroad Company v. Oscar Henderson.

1. AMENDMENT—*when allowance of, after argument of motion for new trial, not improper.* It is not an abuse of discretion to permit the plaintiff to amend his declaration after the motion for a new trial has been argued by the defendant where the allowance of such amendment does not operate to the prejudice of such defendant.

2. PEREMPTORY INSTRUCTION—*what question presented by motion for.* A motion to take a case from the jury presents the naked legal question whether there is any evidence in the record tending to support the plaintiff's case.

3. FELLOW-SERVANT—*master not liable for breach of duty by.* A master is not liable for the neglect of a fellow-servant to acquaint the plaintiff of a danger which resulted in his injury.

4. MASTER—*cannot delegate personal obligation.* A master cannot delegate the duty of furnishing safe instrumentalities and so escape the liability for failure to furnish such safe instrumentalities.

Action on the case for personal injuries. Appeal from the Circuit Court of Williamson County; the Hon. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the February term, 1905. Reversed, with finding of facts. Opinion filed September 8, 1905. Rehearing denied February 28, 1906.

E. E. DENISON and H. T. DICK, for appellant.

W. H. WARDER and D. T. HARTWELL, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This was an action on the case brought by Oscar Henderson, appellee, against the Chicago & Eastern Illinois Railroad Company, appellant, to recover damages for an injury sustained by appellee when attempting to make a coupling of two cars in operation on appellant's railroad. The declaration contains three counts. The first count alleges that the defendant negligently required plaintiff to couple certain cars, one of which the defendant had carelessly and negligently loaded with timbers extending over and beyond the end thereof for a distance of two feet, by reason whereof plaintiff was injured while attempting to make said coupling. The second count is the same as the first with the added allegation, that the defendant had carelessly and negligently failed to equip the said loaded car with a "grab iron." The third count is the same as the second, omitting the allegation of negligence in loading the car. In each count it is alleged that plaintiff was in the exercise of due care for his own safety and that the defendant well knew the defective or unsafe condition of the car, but that plaintiff had no such knowledge or means of knowledge thereof.

After a demurrer to the declaration was overruled, defendant pleaded the general issue. A trial by jury resulted in a verdict and judgment for plaintiff for $3,000, from which defendant appealed. After the argument of a motion for a new trial and before judgment was entered, the plaintiff, by leave of the court and over the objections of defendant, amended the first count of his declaration by substituting in its proper connection the words: "which latter car was then and there carelessly and negligently loaded" for the words: "which latter car the defendant had carelessly and negligently loaded."

The Chicago & Eastern Illinois Railroad runs south through Williamson, Johnson and Massac counties. About eight miles below Cypress, at a point known as Joppa Junction, the road divides, one branch bearing off southwestward through a little town called Olive Branch, and on to Thebes on the Mississippi river; the other branch bearing off southeastward through a station called Boaz, and on to Joppa on the Ohio river. The Joppa branch curves sharply to the eastward and slopes downward to the north just below the junction, and there are two public highways crossing both tracks at that point, with standard cattle guards on each side of the road and the usual wing fences at each cattle guard on each side of the tracks. On the night of October 22, 1903, freight train 181, with conductor Burgoyne and brakeman Oscar Henderson, went south from Marion to Joppa, and train extra 88, in charge of conductor Verbeck, was coming north from Thebes to Marion. At Cypress conductor Burgoyne received a train order, through the operator, to take up three bridge cars from extra 88 at Joppa Junction and take them to Joppa; he handed the order to brakeman Henderson, whose usual duties required him to attend to such matters. They arrived at the junction with train 181 about 10:30 o'clock that night, cut the train, leaving the caboose and some cars on the main line north of the junction, ran the engine and other cars up on the Joppa branch, and waited for extra 88. The latter train, which had picked up the three bridge cars at Olive

Branch, arrived at the junction, "kicked" the bridge cars in onto Joppa branch and backed out until train 181 could couple up and clear the main line. The three cars stopped just beyond the clearance post and the cattle guards. These cars, consisting of two boarding cars and a flat car, known as A36, were in charge of the regular bridge crew. They had been in service on that part of the road for about eight years and were transferred from place to place, wherever there was bridge construction or repair work needed. The bridge gang lived in the boarding cars and the flat car was loaded with bridge timbers, part of which were 12 x 12 inch pine, sixteen feet long. When set in on the Joppa branch that night the flat car was farthest south. The plaintiff signalled his engineer to back up in order to couple on to the three cars. Both cars to be coupled were equipped with automatic couplers. The first attempt to couple failed on account of the curvature of the track, and the three cars rolled on down the sloping track, going at the rate of about four miles an hour. Henderson got on the track between the two cuts of the moving cars, for the purpose, as he says, of re-adjusting the draw-bars so the cars would couple on the second impact, and gave the engineer another signal to back up. He was working on the inside of the curve where his signals could be seen from the engine, and while waiting for the cars to bump the second time he walked along on the track between the moving cars on the inside of the curve, where the cars were pinched. Just before the cars came together he stumbled on the cattle guard and fell forward, throwing up his left hand to the knuckle or buffer of the flat car in front to save himself, and the cars came together and mashed his hand.

We have adopted such part of appellant's statement of the facts as we regard sufficient and within the evidence for the discussion of the only errors we deem necessary to consider.

At the close of plaintiff's evidence, and again at the close of all the evidence, defendant asked for a peremptory in-

struction to find for the defendant. This the court refused, and error has been duly assigned. Preliminary to the consideration of this assignment, the action of the court in allowing the plaintiff to amend his declaration, after the motion for a new trial had been argued, is to be disposed of. We think the trial court acted within the discretion allowed by law, and that appellant was not prejudiced by what was done. The evidence in support of the allegation of negligence in the first count as it stood before amendment was relevant and competent under the amended count. That the timbers on the loaded cars were out of place and extended beyond the end at the time of the injury is not disputed. Whether this was due to the negligence of the defendant in loading the car, as originally alleged, or to negligence in permitting the use of the car after the load became deranged, as alleged by the amendment, the condition of the load at the time and its effect in causing the injury complained of was an essential part of plaintiff's case. Under the original count it was necessary to prove the condition when the car was first loaded as well as when the injury was received; under the amended count it was necessary to prove the condition prior to and at the time of the injury, and that defendant had timely notice to reload or prevent the use of the car. The only additional element introduced by the amendment was that of notice to the defendant, and the notice upon which the plaintiff relied, then and now, was not, we think, disputed, viz., notice to the brakeman Ralph Childers, who testified that when the cars were set out at Joppa the timbers projected over the end. The amendment being properly allowed, the action of the court in refusing a peremptory instruction is to be considered with reference to the declaration as amended, and the question now is, whether or not the evidence as we find it in the record, allowing all reasonable inferences in probative effect, tends to prove the cause of action as it is alleged in the declaration. In passing upon this question the rule of law which limits the inquiry by the trial court and of this court on appeal, on a motion to take a case from the

jury, is correctly stated by appellee and supported by numerous authorities. We cite one only of the later decisions in which this is the only question considered. Chicago City Railway Co. v. Loomis, 201 Ill. 118. A motion to take a case from the jury presents the naked legal question whether there is any evidence in the record tending to support the plaintiff's case, and it is never a question of the weight of the testimony. Within this rule, unless there is evidence tending to prove every allegation material and necessary to establish the defendant's liability, the action must fail, and it is the duty of the court to so decide as a matter of law. In the case at bar, under the first count of the declaration, it was alleged and was necessary to prove that defendant "well knew," that is, had notice of the unsafe condition of the loaded car in time to have prevented its use. Under the second and third counts it was necessary to prove that the car was constructed without a "grab iron," or if out of repair in that respect, that the defendant had timely notice. Appellee bases his right to a recovery on the accepted and well-established proposition of law that the master owes to his servants the personal duty of using ordinary care and diligence to provide and keep in repair for their use reasonably safe instrumentalities of service; and among them are a reasonably safe place to work, and reasonably safe appliances with which to work. This duty of the master is a positive obligation, and for negligence respecting such duty, if thereby the servant is injured, the master will be liable in damages. It is equally well established that before a recovery can be had the negligence complained of must be proved. Applying the law to the facts in the case at bar it was the duty of the appellant, in supplying a safe instrumentality with which to work, properly to load with lumber the car in question for transportation by its servants over its road from Olive Branch to Joppa. There is no evidence that the car was not properly and safely loaded, and hence no failure of appellant in its duty to supply a reasonably safe appliance to appellee and its other servants with which to work in mov-

ing the car between designated stations. If after the car was loaded and put into service it became defective or out of repair, in this case, if the timbers were displaced in the load by operation of the train and the loaded car in consequence was unsafe in the use required, it was the duty of appellant, upon notice, express or implied, to use reasonable diligence to repair the unsafe condition or prevent the use of the car until such repair could be made. The notice to be availing in such case must be to the master direct or to some one in the master's service who represents the master in the duty to inspect and keep in reasonably safe repair the appliances and instrumentalities in use. There is no evidence in this record tending to prove notice of the unsafe condition of the car to appellant or any employee or servant standing in the representative capacity mentioned. The brakeman, Childers, was in no sense such representative of the appellant, and his knowledge of the condition of the loaded car may not operate as notice to appellant. No doubt it was his duty as a fellow-servant to acquaint appellee with the unsafe condition of the car and warn him of the danger in coupling it, but for his neglect in doing so, being a fellow-servant, appellee is without remedy against appellant. The contention of appellee that appellant delivered the car in an unsafe condition to appellee on the Joppa track at the junction is untenable, for the reason that the loaded car was put into the service or delivered at Olive Branch to appellee and other servants composing the crew of freight trains 181 and extra 88, to whom fell the duty, in the line of their employment, to transport or move it from Olive Branch, the point of delivery, to the point of destination. As held in C., B. & Q. R. R. Co. v. Avery, 109 Ill. 314, cited by appellee, "care in the supplying of safe instrumentalities in the doing of the work undertaken by the servant is a duty the master owes to the servant, and when the performance of that duty is devolved upon a fellow-servant, the master's responsibility in respect of that duty still remains. In such case the negligence of a fellow-servant is the master's neglect of duty." That the doc-

trine announced in the Avery case has no application in this case is apparent when it is observed that the duty of appellant to supply a safe car to appellee did not devolve upon Childers, the fellow-servant of appellee. The charge of negligence in the case just cited was that the defendant, a railroad company, received from another railroad company a car with a broken coupler and put the same in use upon its own road. The court held, in effect, that the defendant could not relieve itself of the duty to furnish its employees with safe appliances by saying that the defective appliance which it did furnish was the property of some other company. In reason the principle announced cannot be applied to a case in which the working crew of one train delivers to the crew of another train a defective car for continued transportation over the same road, the crews of both trains being employees of the same company. Appellee and Childers were fellow-servants within the most restricted definition that may be invoked. They were servants of the same master in the same line of employment, co-operating in a particular work at the time of the injury, and their usual duties were such as to bring them into such habitual association as to afford them power and opportunity of exercising an influence, each upon the other, promotive of mutual safety. Duffy v. Kivilin, 195 Ill. 630. So far as the negligence of Childers contributed to appellee's injury, the risk was assumed and no action will lie.

What we have stated respecting the first count of the declaration may with even greater force be applied to the second and third. There is no evidence tending to prove that the car was constructed or put into the service of the road without a "grab iron", or that it afterwards became defective as alleged and that appellant had notice. There is positive testimony on behalf of the appellant, and this is not disputed, that the car was properly loaded and left upon the track at Olive Branch, and at that time that it was provided with a grab iron. Within a few hours and less than a hundred miles this unfortunate accident happened by which appellee was injured, but as it does not appear

from the evidence that his injury was due to the negligence
of appellant, the judgment of the Circuit Court must be
reversed with a finding of facts.

*Reversed.*

We find as facts, to be incorporated with the judgment,
that appellant was not guilty of the negligence alleged in
the declaration.