Charles Leibnow, Appellee, v. Wisconsin Lime & Cement Company, Appellant.

Gen. No. 15,064.

1. MASTER AND SERVANT—*obligations of former.*  It is the duty of a master to exercise reasonable care to furnish to the servant a reasonably safe place to work and the same rule obtains with respect to furnishing the servant with implements and appliances wherewith he is to do his work.

2. MASTER AND SERVANT—*what does not excuse former from performance of obligations.*  The obligations of the master with reference to the furnishing of a safe place to work and safe appliances are not relieved by the fact that the servant injured as well as other servants had themselves undertaken to add to the safety of such place and appliances.

3. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.*  The doctrine of assumed risk does not operate to defeat a recovery unless it is established that the servant understood and realized the danger which resulted in his injury.

Action in case for personal injuries.  Appeal from the Superior Court of Cook county; the Hon. WILLARD M. MCEWEN, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1908.  Affirmed.  Opinion filed October 21, 1910.

**Statement by the Court.**  Liebnow, the plaintiff, was in the employ of the Wisconsin Lime & Cement Company, the defendant, to drive a team and large box wagon used to haul lime and cement.  Plaintiff had been working as a teamster in Chicago for four or five years continuously, before he started

working for defendant. He began working for the defendant on July 18, 1905, at half past six o'clock in the morning. Fred Troester, defendant's foreman, then, from among several like wagons, pointed out a wagon which he told plaintiff to take and he also showed plaintiff a team which plaintiff was to use. Plaintiff hitched the team to the wagon and drove to a railway car containing lime and from that car he, with the aid of others there, loaded his wagon with lime. He then drove a distance of about a mile, where he unloaded his wagon with a shovel and delivered the lime. Thereafter he drove back and stopped in front of defendant's office, where he expected to get an order for his load. By this time it was about eleven o'clock in the forenoon. In connection with getting off the wagon plaintiff was injured and for that injury he brought this suit. In a trial by jury he recovered a judgment for $2250, from which this appeal is prosecuted by the defendant.

The wagon was equipped with what is known as a hinged seat. This seat was at the front of the wagon and came out to the dash-board. A foot-board, upon which to place the feet, projected out in front of the box of the wagon and was about ten inches wide. The seat was not as wide as the wagon box and stood up about eighteen inches above same, in the center of the width thereof, and was about two or two and a half feet long, that is, it was only sufficient to seat one person. Two upright standards, about two feet apart, were fastened to the front end of the box. On the top of each one of these two standards a piece of wood or iron was attached which projected back into the wagon at right angles from the standard. Upon each of these horizontal pieces was placed another like horizontal piece. The upper and the lower pieces were connected by a bolt hinge at their front ends. Then two leaf springs were fastened upon the upper pieces and thereupon was fastened the seat. Thus the hinged seat, capable of being tipped forward, was constructed. The evidence is that these hinge seats were in common use and one of plaintiff's witnesses testified that he had known of them for over ten years and that they were *the* seats for coal wagons and lime

wagons. It also appears that the hinges and everything about the seats were in plain sight and that all the defendant's wagons were equipped with these seats.

The wagon plaintiff obtained for driving, different from the other wagons of the defendant, had attached to the seat what the witnesses called a 3-bow canopy, or top for shading the driver. Plaintiff testified that when the wagon, with the shade upon it, was assigned to him, he regarded himself as being especially fortunate. This canopy was held up by the middle one of the three bows thereof being attached directly to the seat—one on each side. The front and back bows were attached to the middle bow at a point about six or eight inches above the seat. The canopy was so attached to the seat as to be adjustable and the driver could move it forward or back into any position he desired.

It is admitted in the record that when the wagons with these hinge seats are bought in the market they come to the purchaser without any device or contrivance to prevent their being at all times swung freely on their hinges and tipped over toward the front.

As plaintiff was in the act of alighting in front of defendant's office, he, according to his own testimony, in stepping down placed first one foot upon the wheel and then the other foot upon the whiffle-tree or evener and as he was putting his foot upon the whiffle-tree "the horses made a little jerk" and the seat and canopy tipped forward so that the canopy struck the horses and they, being frightened, started running and dragged him about fifty feet when he dropped to the ground; that in getting down he had hold of the seat box with one hand and of the foot-board with the other and that he did not touch the canopy at all before it fell forward.

In contradiction of the plaintiff's version of the occurrence defendant produced a written statement signed by plaintiff September 5, 1905, and called as a witness one Briggs, the only eye witness, who was in defendant's employ at the time of the occurrence but not when he testified. In the statement plaintiff says: "I drove up in front of the office, put my lines around the end of seat, grabbed hold of the top, swung

to the wheel with one foot and just as I was about to step to the ground this top and seat, which was on hinges, fell forward over the front of wagon and top struck the horses, making them run away   *   *   *.   If they had told me that this seat was on hinges, so that it could be doubled over the front of the wagon, I would not have put my weight on it so as to pull it over where it struck the horses." The witness Briggs testified that when plaintiff got off. the wagon he caught hold of the canopy with his left hand and swung around to get off and that the seat tipped forward and struck the horses by reason of plaintiff's taking hold of the canopy.

Plaintiff testified that before the accident he did not know the seat was a hinged seat; that he had made no examination of the wagon or of the seat; that it appeared to him as if the seat was solid and fastened; that he knew nothing about any hinge seat. From the evidence of other employes of the defendant and of the defendant's foreman it appears that the seat had tipped forward on previous occasions, of which fact the foreman was aware, and that in order to prevent this seat with the canopy tipping forward it had. been tied or fastened with straps, by other employes when using this wagon. One employe testified the foreman had once, previous to this accident, told him he better fasten it with straps or he might have an accident.

F. J. CANTY and J. C. M. CLOW, for appellant.

F. W. JAROS and FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

It is the duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place in which to work. Hess v. Rosenthal, 160 Ill. 621; Metcalf Co. v. Nystedt, 203 Ill. 333. The same rule obtains with reference to furnishing the servant with the implements and appliances wherewith he is to do his work. We think that when the hinge seat here involved had the canopy attached and was

at the same time unfastened it was not a reasonably safe implement or appliance. When the seat was in that condition the very thing that did happen was likely to happen at any moment. The foreman, plaintiff's superior, testified that for three years he drove this same wagon that plaintiff drove; that while he was driving the wagon the seat tipped over him once because he "caught hold of it" and he then tied it with a string or strap and thereafter drove the wagon with the seat so tied. In other words, he tied the seat to make it safe. This was clearly a recognition that without being fastened the seat was not safe. In the case of plaintiff it was the master's duty to make the seat safe for the plaintiff; it was a neglect of the master's duty not to do so. The fact that other employes had, for themselves, fastened their seats cannot be regarded as having the slightest bearing in exoneration of defendant. Under the circumstances of this case such custom, if it were a custom, did not relieve the master of the duty to furnish this plaintiff with a reasonably safe implement with which to do his work. Another employe of defendant who testified had two experiences in having this same seat tip over while unfastened. Once it was tipped over by a gust of wind and the other time because, as he testified, he made a "mistake" and "grabbed it" and it came forward. As put by this witness, the seat "needed a strap on, whenever it had a canopy top on."

True, the condition of the seat was readily ascertainable upon inspection for the hinges were in plain sight and, undoubtedly, after using the wagon a short period the driver, plaintiff, would have realized the situation and possible dangers; but, upon the evidence, we cannot say that, before he was injured, he understood and realized the danger so as to charge him with having assumed the danger or with contributory negligence. It was, as stated, the master's duty to furnish a reasonably safe implement and it was not the servant's duty to make any inspection to ascertain whether the implement was safe.

It is immaterial whether the accident happened accord-

ing to the plaintiff's version in testifying or according to the version of the witness Briggs.

We are convinced, not only by the dictates of common sense but by the experience of others detailed in the evidence, that the unfastened seat with a canopy or top was an unsafe contrivance and we can arrive at no conclusion other than that defendant failed in its duty to exercise reasonable care to furnish its servant with a reasonably safe implement with which to do his work, when it furnished him with the wagon and seat in question. The judgment will be affirmed.

*Affirmed.*